UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CASE NO.: 3:06CV-364-H

TIMOTHY DICKENS, et al.                                    PLAINTIFFS

V.

OXY VINYLS, LP                                             DEFENDANT

**MEMORANDUM OPINION**

Timothy Dickens, along with seventy-one other named plaintiffs, ("Plaintiffs"), live on sixty properties in the "Rubbertown" area of Louisville, KY. Oxy Vinyls ("Defendant") operates a manufacturing facility (the "Oxy Vinyls Facility" or the "Facility") in that vicinity manufacturing polyvinyl chloride (PVC). Their lawsuit complains of emissions of fallout and noxious odors into the neighborhoods immediately adjacent to the Oxy Vinyls Facility, and asks for injunctive and monetary relief. The Court has provided each side with a full opportunity to uncover all relevant evidence and to secure necessary expert testimony to support their claims.

Defendant has moved for summary judgment on the grounds that Plaintiffs have produced insufficient evidence to support their claims. Upon reviewing all of the available evidence and the applicable law, the Court concludes that Plaintiffs cannot prevail on any claims due to an absence of evidence concerning virtually all elements of the claims. Therefore, Plaintiffs' claims must be dismissed.

I.

The evidence stated most favorably to the Plaintiffs is as follows.[1]

The Oxy Vinyls Facility is located in the area of Louisville known as "Rubbertown."   It manufactures polyvinyl chloride by polymerizing vinyl chloride monomer ("VCM").  As part of this manufacturing process, the Facility uses Vinyl Chloride.  Vinyl Chloride has a generally identifiable smell as "sweet/ethereal."  Defendant monitors its chemical emissions using a permanent system of real-time ambient air monitors that function constantly at 40-50 locations around the plant. These monitors test air samples every hour for Vinyl Chloride or VCM levels in the air. An alarm sounds throughout the plant if any potentially dangerous chemical reaches a level in relation to the OSHA standard.

 The Oxy Vinyls Facility is situated in close proximity with two large coal-fired electric generating plants. The first, LG&E's Cane Run Station is located 4.2 miles south of Oxy Vinyls. The second, Duke Energy's Gallagher Station is located across the river and 2.9 miles north of Oxy Vinyls. All of the plants use coal combustion, the by-products of which are nitrogen dioxide, nitrous oxide, sulfur dioxide, and hydrochloric acid.  The Zeon, DuPont and Rohm & Haas plants are also located within a mile of the Oxy Vinyls Facility.  Therefore, many of the class members in this proposed settlement are also potential class members in the other pending cases.

Plaintiffs complain of terrible smells that prevent them from enjoying their individual properties. They describe the offending smells as scents of burning tar, an outhouse, a sweet

---

[1] On the Court's docket are four other cases which assert similar types of claims concerning emissions from chemical plants all located within two miles of each other.  It is important to remember that the actual evidence brought to bear upon these separate cases may be quite distinct.  In each case, as to any motion before the Court, it is the particular evidence which determines the result.

smell, chlorine, rotten eggs, passed gas from a mule, rubber, strong sulfur, baking a cake, a bakery, sewage, dill pickles, and doughnuts.  Plaintiffs have been aware of these smells for many years, and have rented, refinanced, and borrowed money against their properties, improved their properties, and signed leases throughout this litigation.

Plaintiffs' complaints cover a wide range of smells, which could be attributed to a number of different facilities in the Rubbertown area. Plaintiffs have focused on the most consistent complaint of a "sweet" smell. They hired Stephen Paul to offer expert testimony about the presence of that odor, its identity, and whether it was attributable to the Oxy Vinyls Facility. Mr. Paul is an industrial hygienist by profession; but he has no training or credentials suggesting any expertise in odors. Because of Plaintiffs' common complaint of a noxious sweet smell, and with the knowledge that the Facility uses Vinyl Chloride, Mr. Paul concluded that the Facility must be the source of the sweet smell. He proceeded with testing based on that assumption.

Mr. Paul collected and tested twelve summa air canister samples at various locations "downwind" of the Oxy Facility. He selected each site based upon his personal conclusion that he could "smell" Vinyl Chloride at that location. The test consisted of an instantaneous, hand-held instrument reading for hydrochloric acid, nitrogen dioxide, nitric oxide, and sulfur dioxide (the summa canisters were collected for lab analysis). None of the chosen locations were actually on the property of a Plaintiff, but each was within a two mile radius of the Oxy Vinyl Facility. Mr. Paul previously smelled Vinyl Chloride in only two instances: one in 1974 when he toured the Vinyl Chloride unit at Dow Chemical; the second between 1976 and 1988 when he was an industrial hygienist with Monsanto where Vinyl Chloride was used "somewhere along the line…in a minor way."

Once the samples were collected, Mr. Paul contracted with an independent laboratory, Columbia Analytical Services, to conduct a full TO-15 analysis, which provides an analysis of 97 compounds.  However, he requested a report only on the results for Vinyl Chloride and Cumene, and sought no results for other chemicals present.  The Columbia lab did not detect Cumene in any of the canisters, and detected Vinyl Chloride in only six of the twelve canisters. The presence of Vinyl Chloride ranged from .29 parts per billion to 1.7 parts per billion. The remaining six canisters showed no sign of Vinyl Chloride.

Defendant has introduced evidence that both the United States Agency for Toxic Substances and Disease Registry and the American Conference of Government Industrial Hygienists list the odor threshold for Vinyl Chloride as 3,000,000 parts per billion. This means that at concentrations below this amount, the human smell cannot normally detect Vinyl Chloride.  Mr. Paul did not disagree with this threshold.  Plaintiffs offered no other evidence contrary to this standard.  The odor threshold is millions of times higher than the highest concentration recorded by Mr. Paul.  According to Defendant's experts, if Vinyl Chloride was present at or above the odor threshold at the nearest property, Oxy Vinyl would have to be releasing Vinyl Chloride at 52,485 pounds per hour. None of the records of emissions from the Oxy Vinyls Facility show such a level of release.  Defendant is required to report any release in excess of one pound, which has only happened four times in the ten years since 1999.

Plaintiffs also identified two damages experts.  W. Patrick Ryder has offered a "merit based Expert Opinion on the diminution of market value of Plaintiffs' residential property."  He was formerly the chief tax assessor for the City of Detroit; however he is not, and has never been a licensed real estate appraiser. To prepare his opinion, Ryder drove around 95% of the neighborhood surrounding the Oxy Vinyls facility and looked at the neighborhood. He did not

4

speak to sellers, buyers, brokers, Realtors, lenders, or Plaintiffs; nor did he analyze any sales data for the relevant properties over any time period.  After conducting his investigation, Ryder concluded that the "stigma or strain of pollution discharge would have a significant impact on property values" and that, therefore, the properties have zero value.

Plaintiffs also identified David Hogan of Allgeier Company to "provide local experts to work with and assist Mr. Ryder if necessary."  Mr. Hogan did not conduct a valuation of any Plaintiffs property, nor did he provide any opinion of a before or after market value of any of the properties.  Hogan's report contained a "preliminary opinion" and suggested a hypothetical reduction in value unrelated to any direct activity at the Oxy Vinyls Facility.

## II.

Summary Judgment is appropriate where no genuine issue of material fact exists, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party initially bears the burden of demonstrating that an essential element of the non-moving party's case is lacking. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999). The non-moving party may respond by showing that a genuine issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute exists where, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

Plaintiffs allege that Defendant is strictly liable for their damages.  Strict liability for property damage only applies where the defendant engages in an ultra hazardous dangerous

5

activity. *Smith v. Carbide & Chems. Corp*, 225 S.W.3d 52, 55 (Ky. 2007); *See also Randall v. Shelton*, 293 S.W.2d 559, 561 (Ky. 1956) (stating that defendant can only be liable for property damage in cases of negligence, engaging in an extra-hazardous activity, or committing an intentional trespass).  Kentucky does not categorically exclude any activity as being ultra hazardous, but it has only affirmatively recognized blasting activities and the pollution of a stream resulting in damage to a lower riparian landowner.  *Fletcher v. Tonnecco, Inc.*, 816 F. Supp. 1186, *5 (E.D. Ky. 1993) (withdrawn at the request of the court); *Marlowe Construction Co. v. Jacobs*, 302 S.W.2d 612 (Ky.1957) (citing *Langhorne v. Turman*, 133 S.W. 1008 (Ky. 1911) (blasting)); *Inland Steel Co. v. Isaacs*, 143 S.W.2d 503, 504-05 (Ky. 1940) (stream pollution flooding property); *Beaver Dam Coal Co. v. Daniel*, 13 S.W.2d 254, 255-56 (Ky. 1929) (stream pollution flooding property)).  Black's Law Dictionary defines an ultra hazardous activity as "[a]n undertaking that necessarily carries with it a significant risk of serious harm even if reasonable care is used."  BLACK'S LAW DICTIONARY "abnormally dangerous activity" (8th ed. 2004).

Defendant engages in a manufacturing process that releases chemicals into the air.  But the evidence presented here, virtually ends with the known fact of emissions. Plaintiffs offer no evidence that the manufacturing process results in physical harm to any property.  Nor is there evidence of any chemical particles actually touching the property.  Further, no evidence suggests that the levels of chemicals released are physically dangerous to a person.  Thus, the Court has no basis for concluding that the release of chemicals poses a significant risk of serious harm.

The only permissible inference from the evidence is that Defendant uses reasonable care to control the amount of chemical emitted from its Facility.  While the chemicals may be

6

annoying, their presence does not cause physical injury or property damage.  The release of

chemicals of this type is far different from blasting activities and flooding from polluted

streams.  Such activities touch the land and physically alter it.  Releasing limited amounts of

Vinyl Chloride is apparently not an ultra hazardous activity.  Since  Plaintiffs' allegations focus

only on harm to property and the Court finds no ultra hazardous activity at issue, Defendant

cannot be strictly liable.

IV.

Plaintiffs also assert actions in trespass and negligence.  Trespass is an intended or

negligent encroachment onto another's property that is not privileged.  *Rockwell Int'l Corp. v.*

*Wilhite*, 143 S.W.3d 604, 619-20 (Ky. App. 2003).  Trespass focuses on an object or thing

entering a person's property and interfering with his or her possession or control.  *Bartman v.*

*Shobe*, 353 S.W.2d 550, 555 (Ky. 1962) (stating that a trespass is "more visible and tangible"

than a nuisance).

Negligence requires the defendant owe the plaintiff a duty, a breach of that duty, and

that the breach cause the plaintiff's injury.  *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88

(Ky. 2003).  In Kentucky, "actions for damages to real property caused by another's negligence

sound in trespass," not negligence.  *Wimmer v. City of Ft. Thomas*, 733 S.W.2d 759, 760 (Ky.

Ct. App. 1987) (citing *Commonweatlh, Dep't of Highways v. Ratliff*, 392 S.W.2d 913 (Ky.

1965)).

To support a claim of negligence, Plaintiffs must show some personal injury.  Plaintiffs

have presented no evidence of such injuries.  To support an action for trespass, an object or

thing must actually enter the person's property and harm it.  Plaintiffs present no evidence of

particulate matter being present on their property.  Although Plaintiffs did collect dust from

7

various properties, no tests were performed to identify the contents of that dust.  No expert has

even attempted to identify the source of the white fallout nor do they identify the contents of the

white fallout.  Without evidence of the contents of the alleged dust, Plaintiffs cannot show that

any particulate matter has entered their property.  The only remaining evidence is of the

transient airborne presence of odor-causing chemicals.  That evidence does not support a claim

for trespass.

V.

Plaintiffs final and most viable cause of action arises in nuisance.  A nuisance "arises

from the unreasonable, unwarranted, or unlawful use by a person of his own property and

produces such material annoyance, inconvenience, discomfort or hurt that the law will presume

a consequent damage."  *Smith v. Carbide & Chems. Corp.*, 507 F.3d 372, 379 (6th Cir. 2007)

(quoting *City of Somerset v. Sears*, 233 S.W.2d 530, 532 (Ky. 1950)) (internal quotations

omitted).  Its essence is the interference with the use and enjoyment of land.  *Id.*  Nuisance does

not require proof of negligence.  *Lynn Min. Co. v. Kelly*, 394 S.W.2d 755, 758 (Ky. 1965).

Kentucky consistently treats odor and noise complaints as nuisance claims.  *See, e.g., J.R.

Curry v. Farmers Livestock Mkt.*, 343 S.W.2d 134 (Ky. 1961) (odors and noise from livestock

business); *C. Rice Co. v. Ballinger*, 223 S.W.2d 356 (Ky. 1949) (odors from slaughterhouse);

*Hall v. Budde*, 169 S.W.2d 33 (Ky. 1943) (odors from hog farm).

A nuisance claim has two elements: "(1) the reasonableness of the defendant's use of his

property, and (2) the gravity of harm to the complainant."  *Louisville Ref. Co. v. Mudd*, 339

S.W.2d 181, 186 (Ky. 1960).  In Kentucky there are two types of nuisances: private and public.

*W.G. Duncan Coal Co. v. Jones*, 254 S.W.2d 720, 723 (Ky. 1953).  A private nuisance affects

an individual or a limited number of individuals, while a public nuisance affects the public at

8

large.  *Id.*  Kentucky codified the definition of private nuisance as existing "if and only if a defendant's use of property causes unreasonable and substantial annoyance to the occupants of the claimant's property or unreasonably interferes with the use and enjoyment of such property, and thereby causes the fair market value of the claimant's property to be materially reduced." KRS §§ 411.530(2), 411.540(2).  Diminution in value of the property is the only proper measure of damages.  KRS § 411.560.  Plaintiffs' claims for nuisance are plagued with issues surrounding proof of causation and damages.

### A.

Plaintiffs rely on testimony from Mr. Paul to show that Defendant caused a nuisance. He collected air samples at several locations downwind of the Oxy Vinyls Facility where he smelled a "sweet smell" he associates with Vinyl Chloride.  He also read individual questionnaires and used government documents.  Only six of the twelve air samples contained Vinyl Chloride.  None of the samples contained concentrations of Vinyl Chloride above the recognized threshold requirements for smelling the chemical (the "odor threshold").  In fact, the odor thresholds for Vinyl Chloride are millions of times higher than the measured concentrations.  Mr. Paul did not look at a full report listing all the chemicals present in the samples.  His tests cannot appropriately be considered expert testimony.  His methodology is not scientifically sound as he took very few samples and did not examine the full test results. Even if the test results were admitted, they fail to show causation as the results demonstrate that Vinyl Chloride was never present in sufficient levels to meet the odor thresholds.

Plaintiff Wright and Mr. Paul both testify about their personal experiences with the smell.  Wright worked at Zeon Chemicals, a near by manufacturing plant, for several years.  He is familiar with the odors and particulate matter at that facility through his job.  He testifies that

9

the sweet smell does not come from Zeon, but from Oxy Vinyls.  He has only smelled Vinyl Chloride on four occasions.  Mr. Paul also testifies that he smelled Vinyl Chloride in the class area.  He therefore questions the scientifically accepted odor thresholds he used in performing his air sample analysis.  He states that he remembers what Vinyl Chloride smells like because of his previous experiences with it at Dow Chemical and while working as an industrial hygienist for Monsanto.

That testimony does not establish that Defendant's emissions are causing the noxious odors.  Plaintiffs' individual descriptions of the smell vary.  Mr. Paul's tests do not show that Vinyl Chloride is present in any level that allows individuals to actually smell it.  Plaintiff Wright and Mr. Paul's lay testimony describing what the smell is insufficient to establish the smell of Vinyl Chloride and overcome the test results that reached the opposite conclusion. Neither person is a smell expert and therefore cannot state what is causing the odor.  Even if Plaintiffs established that Vinyl Chloride is present on their properties at levels that permit them to smell it, none of the evidence makes any attempt to establish that the Vinyl Chloride originates from the Oxy Vinyls Facility.

The independent government documentation provided by Plaintiffs also fails to establish causation.  The Toxics Release Inventory ("TRI") reports showing that Oxy Vinyls emits Vinyl Chloride does not establish where the emissions go or in what concentration.  The Strategic Toxic Air Reduction ("STAR") reports produced by the University of Louisville actually show that Oxy Vinyls meets all emission requirements.  Although the Environmental Protection Agency ("EPA") fined Oxy Vinyls, the fine was for particulate matter, not emissions.

Plaintiffs failed to establish that the odor Plaintiffs experience is Vinyl Chloride and they offer no evidence linking any smell to Oxy Vinyls Facility.  Without evidence of causation, Plaintiffs cannot support their claim for nuisance.

### B.

Even were one to assume that Defendant's chemicals did cause the noxious odors, Plaintiffs must also demonstrate harm from those actions.  Kentucky law requires that damages in nuisances cases be measured by a material reduction in fair market value or rental value. KRS § 411.560.  Plaintiff must introduce a "tangible figure from which the value of the use can be deduced," otherwise the valuation is pure speculation.  *Adams Constr. Co., Inc. v. Bentley*, 335 S.W.2d 912, 914 (Ky. 1960).  Determination of fair market value ordinarily necessitates expert opinion.  *Jones v. Jones*, 245 S.W.3d 815, 820 (Ky. App. 2008).  To express such an opinion, the witness "must possess 'some basis for a knowledge of market values.'"  *Id.*  Expert testimony requires that the witness be qualified by "knowledge, skill, experience, training, or education," that the testimony be relevant, and that the testimony be reliable.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (quoting Fed. R. Evid. 702) (internal quotations omitted).

Plaintiffs' evidence of damages is speculative at best.  They primarily offer Mr. Ryder's testimony to establish that all of Plaintiffs' properties are now worthless.  Mr. Ryder lacks appropriate credentials as an expert in real estate appraising and his testimony puts his lack of professionalism on full display.  Mr. Ryder is only a licensed assessor from Detroit, Michigan, not a licensed real estate appraiser nor a member of the Appraisal Institute or the American Society of Appraisers.  His methodology was cursory.  He spent only one day touring the neighborhood, did not enter any homes, did not speak to any Plaintiff, did not talk to sellers,

11

buyers, brokers, realtors, or lenders, did not review tax assessment data, rental agreements, or mortgages, and did not analyze sales in recent years. Furthermore, he did not calculate a change in value from before the nuisance existed.

Finally, his opinion is suspect. Mr. Ryder valued the properties as completely worthless based on the stigma and strain of the issues involved. The Kentucky Supreme Court rejected similar testimony, finding that the expert's opinion that the property was worthless "was merely his subjective opinion and [the expert] pointed to no scientific evidence to support" it. *Wilhite v. Rockwell Int'l Corp.*, 83 S.w3d 516, 520 (Ky. 2002). Similarly, Mr. Ryder's assertion of a zero value defies common sense, particularly given the fact that several Plaintiffs have refinanced their homes in recent years. Mr. Ryder points to nothing beyond his personal opinion to support his valuation. Therefore, his opinion is both unreliable and unsubstantiated.

Hogan's testimony does little to help. Although he works for a certified appraiser group in Louisville, and would likely qualify as an expert, his report does not provide an opinion on any property's value. Hogan did not attempt to value any Plaintiff's property or to quantify the change in value. The report compares neighborhoods to neighborhoods at a specific instance in time. Neither Hogan's opinions nor the data that he uses provides any opinion on the value of the property. Nor do Plaintiffs' individual testimony as to property value provide sufficient evidence of damages. No Plaintiff was able to provide any facts that serve as the basis for his or her opinion. Thus, the evidence presented completely fails to establish diminution in property value.

12

VI.

Plaintiffs provide extensive personal testimony outlining complaints of noxious fumes. Yet, Plaintiffs' complaints alone even when taken as true, are not enough to sustain a viable cause of action.  As a matter of law and fact, Plaintiffs only conceivable claim is for nuisance. The evidence presented, however, cannot support even that claim.  Plaintiffs fail to establish that the smells they experience emanated from the Facility.  In fact, the unrebutted evidence is that whatever Plaintiffs claim to smell, it is not Vinyl Chloride.  Furthermore, Plaintiffs provide no reliable evidence of diminution in the value of their property.  With no evidence of the change in property value, Plaintiffs cannot establish that their property has been damaged. Without such evidence, Plaintiffs claims cannot go further.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record